**INDIAN TRAIL TRADING POST, INC., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 74-1015.

United States Court of Appeals, Sixth Circuit.

Argued June 5, 1974.

Decided Sept. 20, 1974.

Robert L. Ackerson, Ackerson, Ackerson & Remmers, Louisville, Ky., for petitioner.

Libero Marinelli, Jr., Dept. of Justice, Washington, D. C., for respondent; Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and Gary R. Allen, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief.

Before WEICK, PECK and MILLER, Circuit Judges.

PER CURIAM.

The Internal Revenue Service assessed an income tax deficiency of $3,298.84 against the petitioner, Indian Trail Trading Post, Inc., for the taxable year ending October 31, 1967. The petitioner sought from the Tax Court a redetermination of the deficiency assessment. The Tax Court upheld the I.R.S.'s assessment and from that decision this appeal is taken.

A detailed account of the factual situation from which the case arises is set forth in the opinion of the Tax Court, Indian Trail Trading Post, Inc. v. Commissioner of Internal Revenue, 60 T.C. 497 (1973). Briefly stated, the petitioner owned 30 acres of real estate in Louisville, Kentucky, part of which contained a shopping center. In late 1964 or early 1965, the petitioner began plans to construct a Woolco (F. W. Woolworth Company) store on the undeveloped portion of the 30-acre tract. The petitioner obtained interim construction financing in the amount of $630,000.00 from the Citizens Fidelity Bank and Trust Company and a commitment from Commonwealth Insurance Company for up to $1,100,000.00 of permanent financing. Construction began in early 1965 and later in the year with the work largely completed the petitioner, using the proceeds of the Citizens' loan and its own corporate funds, paid $843,000.00 to the construction company. In 1966 the petitioner borrowed the full $1,100,000.00 committed by Commonwealth. The petitioner used some of the proceeds of the Commonwealth loan to pay Citizens, $630,000.00 principal and $12,490.00 interest, in full payment of that obligation. The balance of the proceeds from the Commonwealth loan was placed in

petitioner's general corporate account. In connection with the expansion of the shopping center, the petitioner incurred some other expenses. In 1966, the petitioner purchased some unimproved real estate adjoining the shopping center for $100,632.00. In the early part of 1965, the petitioner expended $113,000.00 to enclose a drainage ditch on the land and $24,000.00 worth of structural steel to be used in the construction of the shopping center. Another expense was incurred in the settlement of a law suit with W. T. Grant Company, a tenant in the existing shopping center, which claimed that the construction of the Woolco Store was in violation of its lease agreement with petitioner. The settlement cost the petitioner $175,000.-00 plus $50,000.00 in attorneys fees.

In 1966, the petitioner, using money the Tax Court found to be traceable from its general corporate funds, purchased $150,000.00 worth of tax-exempt Kentucky Toll Road Bonds. It is this transaction that the Internal Revenue Service determined made the petitioner ineligible for an interest deduction of $8,250.00 paid on a part of the Commonwealth loan.

Section 265(2) of the Internal Revenue Code of 1954 disallows a deduction for interest paid on an indebtedness if the indebtedness was incurred or continued in order to purchase or carry tax-exempt obligations. The Tax Court found that the debt incurred by the petitioner for the expansion of the shopping center was in excess of the amount needed for that business purpose and that some of the excess funds were used to purchase tax-exempt bonds. The petitioner attempts to offer other explanations for obtaining a loan in the amount borrowed and for maintaining that amount of indebtedness. Despite these explanations, the Tax Court found that with cash on hand in excess of its current business needs, and with the indebtedness outstanding, the petitioner chose to purchase tax-exempt bonds. We are cognizant that the existence of indebtedness at the time when one pur-

chases tax-exempt securities does not automatically cause one to be engaged in activity proscribed by Section 265(2). Wisconsin Cheeseman, Inc. v. United States, 388 F.2d 420 (7th Cir. 1968). The section applies only where the indebtedness is incurred or continued *for the purpose* of acquiring or carrying tax-exempt securities. This purpose may be inferred where the proceeds of an indebtedness are used to purchase the bonds or commingled with a fund from which the purchase money is taken. There may be circumstances where a taxpayer may be able to prove the lack of such purpose despite this tracing of funds to the purchase of the bonds. Yet we are satisfied that the Tax Court did not err in determining that the petitioner failed to make such a showing in the present case. The Tax Court found not only that proceeds of the Commonwealth loan could be traced to payment of the tax-exempt securities but also that a sufficiently direct relationship linked the indebtedness with such tax-exempt securities even apart from such tracing. The Court found:

> The lapse of some eight months between the borrowing from Commonwealth and the purchase of the tax-exempt bonds militates to a degree against the conclusion that petitioner incurred the indebtedness to purchase the bonds. *Cf.* Constance M. Bishop, *supra*, 41 T.C. [154] at 159. On the other hand, the facts indicate that the borrowing generated cash in excess of petitioner's current business needs and in an amount greater than the purchase price of the bonds, and there is nothing in the record herein to show that this situation did not obtain throughout the period between the borrowing and the purchase. Under these circumstances, it might be said that there is a sufficient degree of tracing present to justify the inference that, whatever petitioner's original purpose may have been, it became so diffused by the act of allowing the funds to lie fallow that the actual use of the funds for the acquisition of the

bonds provided the necessary purposive connection with the earlier borrowing.

From the entire record we are persuaded that the findings of the Tax Court are not clearly erroneous.

Affirmed.