H ENTERPRISES INTERNATIONAL, INC., AND SUBSIDIARIES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11478–93.                    Filed July 31, 1995.

*William H. Hippee, Jr., David J. MacLaughlin,* and *Edward J. Pluimer,* for petitioners.
*Genelle Forsberg,* for respondent.

OPINION

SCOTT, *Judge:* Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows:

|  |  | *Additions to tax* | |
| *Year* | *Deficiency* | *Sec. 6653(a)* | *Sec. 6662* |
| 6/30/89 | $3,474,671 | $173,734 | - - - |
| 6/30/90 | 2,575,105 | - - - | $231,580 |
| 6/30/91 | 2,181,276 | - - - | 118,195 |

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

When this case was called from the calendar in St. Paul, Minnesota, the parties filed a stipulation disposing of all of the issues in this case, with the exception of the applicability of sections 246A and 265(a)(2) to the consolidated tax liabilities of petitioners.

On June 29, 1994, petitioners filed a motion for summary judgment with respect to the two remaining issues, in which petitioners moved, pursuant to Rule 121, for judgment in their favor with respect to adjustments made by respondent to petitioners' income tax liability under sections 246A and 265(a)(2). In this motion, petitioners state that there are no issues of material fact with respect to the issues on which they request summary judgment, and that petitioners request that the Court determine: (1) That section 246A may not be applied by respondent to disallow the dividend received deduction of H Enterprises International, Inc. (HEI), a parent corporation, because of indebtedness incurred by Waldorf Corp. (Waldorf II), a subsidiary of HEI; and (2) that section 265(a)(2) may not be applied by respondent to disallow the interest expense of Waldorf II because of purchases and carrying of tax-exempt bonds by its parent HEI.

Petitioners state that the Code is applicable to separate taxpayers and may not be applied to two or more taxpayers as if such taxpayers were one taxpayer, unless the section involved specifically provides for such treatment directly or through related party rules. Petitioners state that even though Waldorf II was completely controlled by HEI, the two are separate entities and, therefore, must be treated separately under sections 246A and 265(a)(2), which petitioners state means that the stock on which a dividend received deduction is claimed (portfolio stock) must be held by the

same one of the affiliated corporations that borrows the funds which are used to purchase the stock, and that the purchase of tax-exempt securities, likewise, must be by the same one of the affiliated entities that borrowed the funds with which the securities were purchased or carried. In other words, petitioners' position is that only if the money borrowed by Waldorf II is used by Waldorf II to purchase portfolio stock or tax-exempt securities can sections 246A and 265(a)(2) apply.

Respondent takes the position that there is nothing in the provisions of section 246A to prohibit application of that section to a parent corporation that uses funds borrowed by its subsidiary to purchase portfolio stock, if the purchase of such stock by the parent is directly attributable to the subsidiary's borrowings, and there is nothing in the provisions of section 265(a)(2) to prohibit the disallowance of an interest deduction to a subsidiary with respect to borrowings which the subsidiary incurred to enable its parent to purchase or carry tax-exempt securities. It is respondent's position that whether the investment of HEI in portfolio stock is directly attributable to the borrowings of its subsidiary, Waldorf II, and whether Waldorf II incurred the indebtedness from which funds were distributed to HEI to enable HEI to purchase or carry tax-exempt securities are questions of fact to be determined at a trial of this case. Therefore, respondent contends that petitioners' motion for summary judgment should be denied.

The parties have stipulated all facts which either party considers necessary for a disposition of petitioners' motion for summary judgment. All the stipulated facts, including the exhibits attached thereto, are found accordingly, and we will recite only those facts necessary to an understanding of our holding with respect to petitioners' motion for summary judgment.

The predecessor to Waldorf Corp. (Waldorf I) was incorporated on September 26, 1984. On October 1, 1984, Waldorf I changed its name to HEI (H Enterprises International, Inc.). At all times from the incorporation of Waldorf I through June 30, 1991, the corporation, which ultimately carried the name of HEI, was organized and existing under the laws of the State of Delaware. On July 15, 1985, Waldorf I (now HEI), in connection with acquiring the assets and liabilities of

the Waldorf business, entered into a loan and security agreement with General Electric Credit Corp. (GECC), whereby GECC agreed to finance the acquisition of the Waldorf business. In connection with the loan and security agreement between Waldorf I (now HEI) and GECC, Waldorf I (now HEI) granted GECC a warrant to purchase common stock of Waldorf I (now HEI). On October 1, 1987, HEI, which as heretofore stated was the corporation whose name had previously been Waldorf I, formed a wholly owned subsidiary named Waldorf Corp. (Waldorf II) and transferred substantially all of the assets and liabilities relating to the Waldorf business to Waldorf II. From October 1, 1987, through February 28, 1988, HEI owned all of the issued and outstanding capital stock of Waldorf II. From February 29, 1988, through June 30, 1991, the outstanding capital stock of Waldorf II was held as follows: HEI held 10,000 shares of class A voting common stock of Waldorf II, and Waldorf II employees held from 872 to 991 shares of class B nonvoting common stock of Waldorf II. From October 1, 1987, to March 9, 1994, the outstanding common stock of HEI was owned by Eugene U. Frey individually and by trusts for the benefit of his family members. During the taxable years ending June 30, 1988, 1989, 1990, and 1991, HEI owned stock of Waldorf II satisfying the requirements of section 1504(a)(2), and for each of these taxable years HEI and Waldorf II properly joined in the filing of a consolidated income tax return under section 1504.

In a writing in lieu of a meeting of the Waldorf II board of directors dated December 18, 1987, the board adopted a resolution to borrow up to $175 million from GECC and pledge or grant a security interest in substantially all of its corporate assets to secure the loan. The board of directors further resolved that coincident with funding the HEI and Waldorf II recapitalization plan through the borrowings from GECC, Waldorf II would distribute to HEI $20 million to be used to discharge the warrant to purchase HEI stock owned by GECC and approximately $9 million to discharge an indebtedness of HEI to Champion International Corp., and further coincident with such funding, Waldorf II would pay a dividend to HEI in the amount of $92 million. On December 23, 1987, Waldorf II borrowed $113,539,873.30 from GECC pursuant to a loan and security agreement between Waldorf II and GECC dated November 24, 1987. Of the

$113,539,873.30, Waldorf II paid GECC the sum of $39,527,873.37, representing: (1) The principal amount of accrued interest on the indebtedness to GECC under the loan and security agreement between HEI and GECC; (2) the repurchase price of $20 million for the warrants held by GECC for the purchase of HEI's stock; and (3) a closing fee relating to the GECC indebtedness in the amount of $5 million. In connection with the borrowings by Waldorf II, HEI signed certain agreements to subordinate Waldorf II's indebtedness to HEI to the GECC debt and to guarantee certain contingent interest payments. At the time of the trial, no such contingent interest payments had been made to GECC. Neither HEI nor any of its shareholders were obligors under the loan and security agreement between Waldorf II and GECC or on the promissory note given by Waldorf II to GECC.

Contemporaneous with the December 23, 1987, borrowings by Waldorf II from GECC, Waldorf II made a distribution to HEI with respect to Waldorf II's outstanding capital stock. The distribution was made with the knowledge of GECC. For financial accounting and Federal income tax purposes, the amount of the distribution was $123,657,000. Waldorf II had no current or accumulated earnings and profits as of June 30, 1988. To the extent of $41,250,353, the distribution was treated as a return of capital on HEI's consolidated Federal income tax return for the taxable year ended June 30, 1988. HEI was obligated to pay the $20 million repurchase price for the GECC warrant, and such amount was included as a component of the distribution of $123,657,000, hereinabove referred to. Waldorf II also discharged other obligations of HEI in the net amount of $1,854,000, which amount was a component of the distribution. The balance of the distribution in the amount of $101,803,000 was represented by $28 million that Waldorf II retained as a loan from HEI and a December 23, 1987, cash payment by Waldorf II to HEI in the amount of $73,803,000. The $73,803,000 cash component of the distribution was initially maintained in money markets or checking accounts by HEI. In February 1988, HEI began purchasing investments, including, but not limited to, portfolio stock and tax-exempt obligations with funds from such money markets or checking accounts.

None of the assets of HEI or of its shareholders, including the portfolio stock and tax-exempt obligations purchased by

HEI, were used as collateral for the GECC indebtedness. From time to time Waldorf II entered into agreements with parties other than GECC to hedge against fluctuation in interest rates on the GECC indebtedness. From time to time, HEI provided guarantees to parties other than GECC in an aggregate amount not in excess of $10 million on interest rate swap agreements of Waldorf II and received a fee of 1.25 percent of the guaranteed amount per annum from Waldorf II for these guarantees. During the taxable years ending June 30, 1989, 1990, and 1991, HEI purchased and held as part of a diversified investment portfolio, tax-exempt obligations and portfolio stock. During the taxable years ending June 30, 1989, 1990, and 1991, the book value of the tax-exempt obligations, including tax-exempt mutual funds, held by HEI ranged between approximately $13 and $47 million. The book value of the portfolio stock held by HEI during such period ranged between approximately $900,000 and $26 million. During the taxable years ending June 30, 1989, 1990, and 1991, HEI received interest on its tax-exempt obligations and claimed the dividends received deduction with respect to the dividends paid on its qualifying portfolio stock.

Waldorf II incurred the GECC indebtedness, at least in part, for the purposes of repaying indebtedness to GECC with respect to a loan and security agreement between GECC and HEI, paying the $20 million to repurchase the warrants given to GECC to purchase stock of HEI, paying a closing fee relating to the GECC indebtedness in the amount of $5 million, making other distributions to or for HEI to discharge certain HEI obligations, and making the cash payment to HEI of $73,108,000. Waldorf II paid the distribution to HEI, at least in part, for the purpose of permitting HEI to realize on the appreciation in value of the Waldorf business through a net cash distribution that was not subject to the obligations under the loan and security agreement with GECC, and the promissory note in reference thereto, and for the purpose of reducing the equity base of Waldorf II to permit key management personnel of Waldorf II to purchase equity positions in Waldorf II.

Petitioners contend that the above-stated reasons for the borrowing by Waldorf II from GECC were business purposes for incurring the indebtedness. Petitioners contend that there were business reasons for Waldorf II's paying the distribu-

tion to HEI other than those agreed to by the parties as heretofore set forth. Respondent disputes that there were other business purposes for these borrowings. Respondent contends that there were other purposes for Waldorf II's incurring the GECC indebtedness and paying the distribution to HEI, one of which was to permit HEI to purchase tax-exempt securities and portfolio stock. Petitioners dispute that this was one of the purposes for the borrowing by Waldorf II. It is respondent's position that since there is not full agreement between the parties with respect to business reasons for the borrowings, or whether one of the purposes of the borrowings was to enable HEI to purchase portfolio stock and tax-exempt securities, petitioners' motion for summary judgment should be denied, because there is an issue as to a material fact. Petitioners contend that since there was some business purpose for the borrowing of funds by Waldorf II, sections 246A and 265(a)(2) are inapplicable to Waldorf II and HEI because they are separate entities.

Rule 121 provides that a party in a case before this Court may seek a summary adjudication in the moving party's favor upon all or any part of the legal issues in controversy. Rule 121(b) specifically states that a decision on such motion shall be rendered if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that a decision may be rendered as a matter of law. Summary judgment is appropriate where the moving party is able to show that there is no genuine issue of material fact and that the matter may be decided on the basis of the documents before the Court. *Giordano v. Commissioner,* 63 T.C. 462 (1975); *Henry v. Commissioner,* 62 T.C. 605 (1974).

Here, clearly, there are certain items with respect to which the parties are not in agreement. The parties agree with respect to the usage of certain of the funds borrowed by Waldorf II which were transferred to or for the benefit of HEI, but they disagree as to the usage made by HEI of the more than $73 million of the borrowed funds transferred to HEI by Waldorf II which were not for specific purposes. Petitioners take the position that these funds were used for business purposes similar to the stipulated usage made of other funds distributed to or for HEI by Waldorf II, and respondent contends

that there is an issue of fact as to whether these funds were used by HEI to purchase portfolio stock and tax-exempt securities. The stipulation itself shows that there is an issue of material fact in this case if a decision depends on the use made by HEI of the over $73. million of borrowed funds which were part of the dividends paid by Waldorf II to HEI and which were initially placed in money market accounts by HEI.

Petitioners contend that the factual disagreements of the parties are not material, since, as a matter of law, where the borrowings are by a subsidiary and the portfolio stock and tax-exempt securities are bought by the parent, the provisions of sections 246A and 265(a)(2) are not applicable to either the parent or the subsidiary. Petitioners contend that since neither of these sections specifically refers to borrowings by one affiliated company of money transferred to another affiliated company which used the money for the purchase of portfolio stock and tax-exempt securities, Congress did not intend that the provisions of sections 246A and 265(a)(2) be applicable to either affiliated entity.

It is respondent's position that since there is no requirement in either section 246A or section 265(a)(2) that the borrowings be by the same entity in an affiliated group that purchases the portfolio stock or the tax-exempt securities, there is no prohibition to the statute's applying when one entity of the group borrows the funds and another entity purchases the stock or securities.

Respondent points out that section 246A(a) provides as a general rule that a portion of the dividend received deduction is not allowable "In the case of any dividend on debt-financed portfolio stock". It is respondent's position that where a subsidiary borrows for the purpose of its parent's using the money to buy the portfolio stock, the portfolio stock is debt financed. Respondent points out that section 246A(f) specifically grants the Commissioner authority to issue regulations "for purposes of this section" under section 7701(f), see *infra*, providing for the disallowance of interest deductions or other appropriate treatment, rather than a reduction in the dividend received deduction, where the obligor of the indebtedness is other than the person receiving the dividend. H. Conf. Rept. 98–861 indicates that this provision is applicable to affiliated corporations. See H. Conf. Rept. 98–861, at 814 (1984), 1984–3 C.B. (Vol. 2) 1, 68.

Section 265(a)(2) provides that interest on indebtedness incurred or continued to purchase or carry obligations, the interest on which is wholly exempt from income taxes, shall not be allowed as a deduction. There is no provision that the borrower be the same as the person who acquires the tax-exempt securities. Section 7701(f) provides as follows:

SEC. 7701(f). USE OF RELATED PERSONS OR PASS-THRU ENTITIES.—The Secretary shall prescribe such regulations as may be necessary or appropriate to prevent the avoidance of those provisions of this title which deal with—

(1) the linking of borrowing to investment, or

(2) diminishing risks,

through the use of related persons, pass-thru entities, or other intermediaries.

Respondent points out that H. Conf. Rept. 98–861, *supra* at 1041–1042, 1984–3 C.B. (Vol. 2) at 295–296, states specifically that this section is intended to apply to section 265(a)(2). The House conference report states: "Nor is any inference intended that any particular provisions under present law or as amended by the Conference Agreement (e.g. sec. 265[(a)](2) or 246A) by its own terms, is not applicable in the case of related parties".

Neither party cites any case dealing specifically with borrowings by a subsidiary and the purchase of portfolio stock or tax-exempt securities by the parent company. The only case dealing with related persons that either party cites is *Drybrough v. Commissioner,* 42 T.C. 1029 (1964), affd. on this issue 376 F.2d 350 (6th Cir. 1967), where indebtedness was incurred by a taxpayer husband, the proceeds of which were either loaned or given to his wife and used to acquire tax-exempt obligations in her name alone. We held that a deduction for interest on the taxpayer's indebtedness was disallowed by section 265(a)(2). In that case we stated that "The fact that the loan was incurred by Drybrough while the tax-exempt securities were purchased in Marion's name is of no moment." *Id.* at 1053.

Petitioners argue that the *Drybrough* case has no bearing on the instant case, since the facts show that the arrangement there was one without substance and might be characterized as a sham. However, in the *Drybrough* case, we stated—

Alternatively, even if Drybrough had a valid indebtedness, or had made a gift to Marion of this portion of the loan proceeds, we believe that section 265 would apply to the transactions involved, since Drybrough's purpose in obtaining the loan in the amount of $700,000 was to effect the purchase of tax-exempt securities. That he would accomplish his purpose by having the securities purchased in Marion's name is immaterial, since the net effect would be to offset an interest deduction with tax-exempt income, as proscribed by the statute. [Citations omitted.]

Petitioners attempt to distinguish the *Drybrough* case because it involved a husband and a wife, whereas the instant case involves corporations which, according to petitioners, should be treated as totally independent, because here a part of the borrowing was for business purposes. Petitioners rely on *Moline Properties, Inc. v. Commissioner,* 319 U.S. 436 (1943). This Court has considered similar arguments in other contexts and concluded that, where otherwise appropriate, adjustments made in the incomes of affiliated groups are not merging of corporate entities, but may be done while respecting the separate corporate entities. *Carnation Co. v. Commissioner,* 71 T.C. 400, 408 (1978), affd. 640 F.2d 1010 (9th Cir. 1981); see also *Humana, Inc. v. Commissioner,* 88 T.C. 197 (1987), affd. in part and revd. in part 881 F.2d 247 (6th Cir. 1989). See *Clougherty Packing Co. v. Commissioner,* 811 F.2d 1297, 1304 (9th Cir. 1987), affg. 84 T.C. 948 (1985), in which the Court observed that the "*Moline Properties* rule" should not be taken out of context and mechanically applied to an entirely different type of question. Here, whether section 246A is applicable to borrowings by a subsidiary which are directly attributable to purchase of portfolio stock by its parent and whether section 265(a)(2) is applicable to borrowings by a subsidiary to enable its parent to purchase or carry tax-exempt securities are entirely different from the question of whether a corporation is to be considered a separate entity from its stockholders for purposes of reporting taxable income, which was the issue in the *Moline Properties* case. We conclude that sections 246A and 265(a)(2) may be applied in the situation here involved, while recognizing the separate entities of HEI and Waldorf II.

In answer to respondent's contention that Congress in enacting section 7701(f) recognized that sections 246A and 265(a)(2) may apply to affiliated corporations, petitioners

argue that since the Commissioner has issued no regulations under these sections, the borrowing by a subsidiary for purchases of portfolio stock and tax-exempt securities by the parent may not be held to be within the application of sections 246A and 265(a)(2).

In our view, the provisions of sections 246A and 265(a)(2), particularly when considered in conjunction with section 7701(f), may in appropriate circumstances be used when one member of an affiliated group is the borrower and another member the purchaser of the portfolio stock or tax-exempt securities. The legislative history of section 7701(f) specifically states that no inference is intended that any particular provision under present law is not applicable in the case of related parties. Neither section 246A nor section 265(a)(2) by its terms requires the borrower to be the same entity as the purchaser of the portfolio stock or the tax-exempt securities.

Petitioners further contend that since no regulations have been issued under section 7701(f), there is no basis to consider or use sections 246A and 265(a)(2) where one of two affiliated parties is the borrower and the other is the purchaser of the portfolio stock and the tax-exempt securities. It is petitioners' position that, absent regulations which the Secretary is authorized to prescribe, there is no basis for considering the provisions of sections 246A and 265(a)(2) in connection with an affiliated group. Petitioners cite the case of *Alexander v. Commissioner,* 95 T.C. 467 (1990), affd. without published opinion sub nom. *Stell v. Commissioner,* 999 F.2d 544 (9th Cir. 1993), in support of their position. Respondent relies on *First Chicago Corp. v. Commissioner,* 88 T.C. 663 (1987), affd. 842 F.2d 180 (7th Cir. 1988), and *Occidental Petroleum Corp. v. Commissioner,* 82 T.C. 819 (1984), in support of her position that the absence of regulations is not a basis for refusing to apply the provisions of sections 246A and 265(a)(2) in this case.

*Alexander v. Commissioner, supra,* involved partners of a limited partnership who had borrowed amounts for use in the partnership activity from a person who had an interest other than as a creditor in such activity. Under section 465(b)(3)(A), amounts borrowed for use in an activity are not considered to be at risk if such amounts are borrowed from any person who has an interest other than an interest as a creditor in such activity. The provisions of section

465(b)(3)(A) applied only to taxpayers engaged in four specifically listed activities. Section 465(c)(3) was enacted as part of the Revenue Act of 1978, Pub. L. 95–600, sec. 201(a), 92 Stat. 2763, 2814. This section provided, in part, that the at-risk provisions were to be extended to other activities. Section 465(c)(3)(D) specifically stated that in the case of an activity described in subparagraph (A) (an activity other than the four listed in section 465(c)(1)), "subsection (b)(3) shall apply only to the extent provided in regulations prescribed by the Secretary." The activity engaged in by the partnership involved in *Alexander v. Commissioner, supra,* was not one of the four activities to which section 465(b)(3)(A) was applicable. Therefore, absent the provisions of section 465(c)(3), the fact that the limited partners had borrowed money to be used in the activity from a person who had an interest other than as a creditor in the activity would be immaterial. In *Alexander v. Commissioner, supra,* we held that since section 465(e)(3)(D) unambiguously provides that the at-risk provisions of section 465(b)(3) shall apply to a "new" activity only to the extent provided in regulations prescribed by the Secretary, the at-risk provisions of section 465(b)(3) were not applicable to the taxpayers involved in that case, since the Commissioner had issued no regulations and, therefore, there was no extent to which section 465(b)(3) could be applied to the partnership activities involved. The *Alexander* case is totally different from the instant case, since there is nothing in the provisions of either section 246A(f) or section 7701(f) that requires that sections 246A and 265(a)(2) not apply to related corporations where one corporation is the borrower and the related corporation purchases the portfolio stock or the tax-exempt securities, absent regulations being issued. Neither section 246A(f) nor section 7701(f) uses the phrase "to the extent provided in regulations". Moreover, the legislative history of the latter provision reflects that Congress did not intend to rule out the application of section 265(a)(2) or section 246A to related parties before regulations under section 7701(f) were issued. We, therefore, conclude that *Alexander v. Commissioner, supra,* is not dispositive of the issues in this case.

However, we' do agree with respondent that the issue decided in *Occidental Petroleum Corp. v. Commissioner, supra,* is similar to the issue in this case. In the *Occidental*

*Petroleum Corp.* case, the taxpayer would have been liable for the minimum tax on tax preference items imposed by section 56 for the taxable year 1977 there involved absent the provisions of section 58. The taxpayer had income from foreign sources which when reduced by losses from its domestic operations resulted in a substantial taxable income. The taxpayer had sufficient foreign tax credits to eliminate its entire Federal income tax liability. However, the taxpayer had certain tax preference items which reduced the amount of its taxable income, and the Commissioner had determined that even though the taxpayer received no tax benefit from the tax preference items, a minimum tax was due upon them under the provisions of section 56. In fact, the case of the same taxpayer had been litigated on this issue for prior years, and the Court of Claims had sustained the Government's position. *Occidental Petroleum Corp. v. United States,* 231 Ct. Cl. 334, 685 F.2d 1346 (1982).

However, in 1976 Congress had enacted section 58(h), which provided that the "Secretary shall prescribe regulations under which items of tax preference shall be properly adjusted where the tax treatment giving rise to such items will not result in a reduction of the taxpayer's tax under this subtitle for any taxable years." That provision was applicable to the year 1977, which was involved in the *Occidental Petroleum Corp.* case before this Court, whereas it had not been in effect for the years involved in the *Occidental Petroleum Corp.* case decided by the Court of Claims. The Commissioner argued that since no regulations had been promulgated under section 58, section 56(b) should apply as it would absent the provisions of section 58(h). We held that it was clear from the provisions of section 58 that Congress intended that the minimum tax not apply to tax preference items that would not result for any taxable year in a benefit to the taxpayer, and that even though the section was worded in the form of authorizing the Commissioner to prescribe regulations in this regard, the fact that no regulations had been prescribed should not be justification for refusing to carry out the intent of Congress. We noted that section 58 was phrased in terms of directing the Secretary of the Treasury to prescribe regulations to carry out the legislative objective, but that the Secretary had prescribed no such regulations as of the date of our opinion, which was 8 years after

the enactment of section 58(h). We pointed out that the failure to promulgate the required regulations should not render the new provisions of section 58(h) inoperative, and that we would not ignore those provisions, but do our best to render a proper decision under the new provisions without such regulations. We held that under the facts in the *Occidental Petroleum Corp.* case the minimum tax did not apply. The case of *First Chicago Corp. v. Commissioner, supra,* in general held to the same effect as our *Occidental Petroleum Corp.* case.

It is true that in our *Occidental Petroleum Corp.* case and the *First Chicago Corp.* case the lack of regulations was detrimental to the taxpayer. It is difficult to say whether the lack of regulations under section 7701(f) is advantageous or detrimental to petitioners, but it is clear that this section does not state or imply that where one member of an affiliated group of corporations borrows money and another member of that group has that money transferred to it and uses the funds to purchase portfolio stock and tax-exempt securities, the provisions of sections 246A and 265(a)(2) apply only to the extent prescribed by regulations. We, therefore, conclude that the fact that regulations have not been issued under sections 246A(f) and 7701(f) does not resolve the issue in this case of whether the borrowing by one member of an affiliated group and the purchase of the portfolio stock and tax-exempt securities by another comes within the provisions of sections 246A and 265(a)(2).

Petitioners also argue that since a part of the money borrowed by Waldorf II and transferred to HEI is shown by the facts to be for purposes other than the purchase of portfolio stock and tax-exempt securities, the entire amount should be treated as borrowed for purposes other than those referred to in sections 246A and 265(a)(2). There are numerous cases in which we have applied section 265(a)(2) involving borrowing by a single corporation partly for business purposes where the borrowing in excess of the amount needed for business was used to purchase or carry tax-exempt securities. See *Indian Trail Trading Post, Inc. v. Commissioner,* 60 T.C. 497 (1973), affd. 503 F.2d 102 (6th Cir. 1974). In the *Indian Trail Trading Post, Inc.* case, we determined the amount of the borrowings used to purchase or carry tax-exempt securities, even though a large portion of the borrowed funds was used

for specific purposes of the corporate business. We stated that the original purpose of the borrowings was immaterial where the evidence showed that in the years there in issue the funds were used to purchase tax-exempt securities. *Indian Trail Trading Post, Inc. v. Commissioner, supra* at 501. Petitioners have shown no basis for a conclusion that a partial business purpose for the borrowings should be considered any differently where affiliated corporations are involved than where a single corporation is involved. Whether any of the borrowed funds in the present case are attributable to the purchase of portfolio stock by HEI or were used to purchase or carry tax-exempt securities by HEI is a fact question and not one to be decided on a summary judgment motion.

Petitioners finally argue that since the consolidated return regulations contain no specific provision with respect to the application of sections 246A and 265(a)(2), these sections may not be applied when a consolidated return is filed. However, there is nothing in the consolidated return regulations that prohibits the application of these sections. Since there are no consolidated return regulations specifically addressing the application of sections 246A and 265(a)(2) to consolidated returns, the provisions of section 1.1502–80, Income Tax Regs., are applicable. This section provides that the Code and other laws shall be applicable to a consolidated group to the extent the consolidated return regulations do not exclude such applicability. Where the consolidated return regulations do not require that corporations filing such returns be treated differently from the way separate entities would be treated, these corporations shall be treated as separate entities when applying provisions of the Code. *Gottesman & Co. v. Commissioner,* 77 T.C. 1149, 1156 (1981). We, therefore, conclude that the fact that petitioners and Waldorf II filed consolidated returns does not dictate that sections 246A and 265(a)(2) are not applicable in computing the income of each of the two members of the consolidated group.

Based on this record as a whole, we conclude that there are issues of material fact in this case, and therefore it is not

an appropriate case for entry of decision on the basis of summary judgment.

*An order will be issued denying petitioners' motion for summary judgment.*