114 T.C. No. 6


UNITED STATES TAX COURT



DAVID H. AND SUZANNE HILLMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 19893-97.          Filed February 29, 2000.



     P's S corporation (S) performed management
services for real estate partnerships in which P had
direct and indirect interests.  P received passthrough
nonpassive income from S and passthrough passive
deductions from the partnerships.  Sec. 469(l)(2),
I.R.C., required R to promulgate regulations "which
provide that certain items of gross income will not be
taken into account in determining income or loss from
any activity (and the treatment of expenses allocable
to such income)".  Pursuant to sec. 469(l), I.R.C., R
issued proposed regulations permitting the offsetting
of "self-charged" interest incurred in lending
transactions.  Under the regulations, a taxpayer who
was both the payer and recipient of the interest was
allowed, to some extent, to offset passive interest
deductions against nonpassive interest income.  R,
however, did not issue any regulation for self-charged
items other than interest.  See sec. 1.469-7, Proposed
Income Tax Regs., 56 Fed. Reg. 14034 (Apr. 5, 1991).

Under circumstances identical to those in the regulation, except for the fact that the self-charged items were management fees rather than interest deductions and income, P offset passive deductions against nonpassive income. R determined that P was not entitled to such treatment because R did not issue a regulation for self-charged items other than interest. P contends that self-charged treatment was congressionally intended for interest and other appropriate items. R does not argue, as a matter of substance, that there is any distinction between interest and management fees within the self-charged regime.

Held: R's decision not to or failure to issue regulations in this case is not a prohibition, per se, to P's ability to treat self-charged items as intended by Congress. Held, further, P is entitled to offset the passive management deductions against the nonpassive management income.

Stefan F. Tucker and Kathleen M. Courtis, for petitioners.

Wilton A. Baker and Bettie N. Ricca, for respondent.

OPINION

GERBER, Judge: In a notice of deficiency addressed to petitioners, respondent determined deficiencies of $294,556 and $309,696 in petitioners' Federal income tax for the years ended December 31, 1993 and 1994, respectively. We consider here whether petitioners are entitled to treat management fees that generated nonpassive income and passive deductions and were paid and received by passthrough entities in which petitioners held an

interest as offsetting self-charged items for purposes of section 469.[1]

## Background[2]

Petitioners resided in Bethesda, Maryland, at the time their petition was filed. During the 1993 calendar year, David H. Hillman (petitioner) owned 100 percent of the stock of Southern Management Corporation (SMC). During the 1994 calendar year, petitioner owned 94.34 percent of SMC's stock. SMC was classified as an S corporation during the 1993 and 1994 taxable years. SMC provided real estate management services to approximately 90 passthrough entities (including joint ventures, limited partnerships, S corporations) that were involved in real estate rental activities (partnerships). Petitioner owns, either directly or indirectly, interests in each of the partnerships. The general partner of each partnership is either petitioner or an upper tier partnership or S corporation in which petitioner owns an interest.

During the 1993 and 1994 taxable years, petitioners did not participate in the activities of the partnerships. Petitioners did, however, participate in the activities of SMC by performing management services that SMC had contracted to perform for the

___

[1] All section references are to the Internal Revenue Code in effect for the taxable years in issue.

[2] This case was submitted fully stipulated.

partnerships.  SMC engaged in real estate management activity which was treated by petitioners as a separate activity, not aggregated with any other activities carried on by SMC.  During the 1993 and 1994 taxable years, petitioner materially participated in SMC's real estate management activity in excess of 500 hours.  During the 1993 and 1994 taxable years, SMC also conducted other operations in addition to real estate management services, such as recreational services, medical insurance plan underwriting, credit/collection services, and a maintenance training academy.  Petitioner did not materially participate in any of these other operations of SMC.

Petitioners reported as salary (income), and SMC deducted as an expense, compensation paid to petitioners for services related to the conduct of the real estate management activity for the 1993 and 1994 taxable years.  SMC separately reported management fee income (after deduction of expenses) on petitioners' 1993 and 1994 Schedules K-1.  The portion of the management fee paid by the partnerships to SMC (and allocable to petitioner's ownership percentage in each partnership) was deducted and resulted in ordinary losses from trade or business on either petitioner's Schedules K-1 for the 1993 and 1994 taxable years or on the Schedules K-1 of upper tier partnerships and S corporations for the 1993 and 1994 taxable years.  In computing their taxable income for the 1993 and 1994 years, petitioners treated the total

amounts of the self-charged management fee deduction (the deduction arising from the transaction between the partnerships and SMC that gave rise to passive management fees expense and nonpassive income) as a reduction from petitioners' gross income from activities characterized as nonpassive under section 469.

The notice of deficiency disallowed the characterization of the management fee expense as nonpassive, referencing section 1.469-7, Proposed Income Tax Regs., 56 Fed. Reg. 14034 (Apr. 5, 1991), which provides only that lending transactions (i.e., any transaction involving loans between persons or entities) may be treated as self-charged. No regulations were issued concerning self-charged situations other than lending transactions.

## Discussion

Respondent advances the unique position that the failure (intentional or unintentional) to issue a regulation providing for petitioners' claimed tax treatment is sufficient to support respondent's disallowance. Ironically, respondent does not argue that petitioners' claimed treatment was incorrect, inappropriate, or otherwise unjustified. More particularly, respondent contends that Congress gave the Secretary the power and/or discretion to issue legislative regulations, and, absent the issuance, there is no entitlement to the tax treatment sought by petitioners.

In section 469(l), Congress mandated that the Secretary issue such regulations as may be necessary or appropriate to

carry out the provisions of section 469. The statute provides for broad regulatory categories or subject matter, but it is silent on the particular items or circumstances to be specifically promulgated. Implementing a directive in the legislative history regarding self-charged lending situations, the Secretary issued a proposed regulation permitting offset of passive interest deductions against nonpassive interest income. See sec. 1.469-7, Proposed Income Tax Regs., 56 Fed. Reg. 14034 (Apr. 5, 1991). The legislative history also anticipated that the Secretary would, to the extent appropriate, issue regulations addressing other self-charged situations.

Petitioners contend that they should be allowed self-charged treatment with respect to their pro rata share of the management fees expense deducted by the partnerships and therefore be allowed to offset it against their share of management income received from SMC.[3] Respondent does not dispute that the circumstances in this case comport with the circumstances described in the proposed regulation with the exception that the regulatory subject matter is interest expense instead of management fees expense.

---

[3] Petitioners seek to offset their management fees expense against their management income by recharacterizing the expense as nonpassive. We note, however, that whether the offsetting items of income and expense are characterized both as passive or nonpassive makes no difference from a practical standpoint.

Petitioners argue that respondent's attempt to limit the scope of the treatment of self-charged items to interest income and deductions in section 1.469-7, Proposed Income Tax Regs., is arbitrary, capricious, or manifestly contrary to section 469, the underlying statute. Petitioners further argue that the proposed regulations violate the congressional mandate as expressed in section 469(l) insofar as such proposed regulations omitted provisions addressing self-charged items other than self-charged interest. Petitioners also contend that it was arbitrary, capricious, and/or manifestly contrary to the underlying statute for respondent, when applying section 469, to disallow the characterization of petitioner's pro rata share of the management fees expense as nonpassive.

Respondent simply counters that there was an exercise of the Secretary's discretion not to issue regulations addressing whether or not self-charged treatment and netting is clearly appropriate in situations other than lending transactions. Respondent further contends that in regard to self-charged transactions, section 469 is not self-executing and therefore, in the absence of regulations addressing self-charged treatment for nonlending transactions, netting is unavailable.

A. Historical Background

Enacted by Congress as part of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, the passive activity loss rules

were specifically designed to limit a taxpayer's ability to use deductions from one activity to offset income from another activity.  These rules were designed to curtail the use of losses generated by passive activities to offset unrelated income generated by nonpassive activities.[4]  Under the section 469 passive activity loss rules, income generated from nonpassive activities cannot be offset by deductions generated from passive activities.

Although section 469 was designed to stop these practices, Congress recognized that it would be inappropriate to treat certain transactions between related taxpayers as giving rise to one character of expense and another type of income.  See H. Conf. Rept. 99-841 (Vol. II), at II-146 to II-147 (1986), 1986-3 C.B. (Vol. 4) 1, 146-147.  The House conference report, in the

---

[4] Use of losses from one activity to offset income from another drove the "tax shelter industry" of the 1980's. Transactions were fashioned to generate losses through the use of accelerated depreciation, interest, and other deductions that were used to offset the taxpayer's other income such as salary, interest, and dividends.  The passive activity loss rules in sec. 469 were designed to curtail the use of tax shelters by restricting a taxpayer's ability to use the losses sustained in the operation of a trade or business to shelter unrelated income, unless the taxpayer materially participated in the operation of that trade or business.  See Schaefer v. Commissioner, 105 T.C. 227, 230 (1995) ("Section 469 represents the congressional response to the widespread use of tax shelters by some taxpayers to avoid paying tax on unrelated income."); S. Rept. 99-313, at 716 (1986), 1986-3 C.B. (Vol. 3) 1, 716.  We note that in the present case, petitioners reported substantial taxable income from their activities and do not appear to be engaged in any tax sheltering activity.

section concerning portfolio income, specifically focused on situations where a payment of nonpassive interest income is received by a taxpayer on a loan to an entity and a passive deduction for the interest payment is passed through to the taxpayer from the entity.  See id.  The legislative history contains a specific example of a taxpayer who receives nonpassive interest income on loans made to a taxpayer's pass-through entity from which passive interest deductions are passed through to the taxpayer.  See id. at II-146, 1986-3 C.B. (Vol. 4) at 146.  Such interest is considered "self-charged" interest and therefore "[lacks] economic significance".  Id.  The example involved a taxpayer who charges $100 of interest on a loan to an S corporation (engaged exclusively in passive activities) of which he is the sole shareholder.  Under the general application of the passive loss rules, the taxpayer might be viewed as incurring $100 of passive activity expense (interest expense passed through by the S corporation), and having $100 of interest income, which cannot be offset by the interest-expense deduction because it is portfolio in nature.  Thus, the taxpayer would have to recognize $100 of taxable income from the transaction, although the economic substance of the transaction was a payment of interest to himself.

Likewise, the Staff of the Joint Committee on Taxation focused on similar issues that could arise if a partnership makes

loans to a partner (e.g., to finance a partner's purchase of all or part of his partnership interest, and the interest expense may be treated as part of a passive activity).  See Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986, at 233 n.26 (J. Comm. Print 1987).  To avoid results that lack economic significance in this type of transaction, it was concluded that taxpayers should be permitted to offset the interest income with respect to a loan to a pass-through entity (in which he has an ownership interest) against the interest expenses passed through to the taxpayer for the same taxable year.  See H. Conf. Rept. 99-841 (Vol. II), supra at II-146 to II-147, 1986-3 C.B. (Vol. 4) at 146-147.  While there is no indication in the legislative history as to whether the offsetting items of income and expense should both be treated as passive or nonpassive, that point is irrelevant because the income and deductions are netted.

The legislative history also contains the suggestion that the amount of a taxpayer's interest income from the loan that is offset by the interest expense of a partnership should not exceed the taxpayer's allocable share of the interest expense (which share for this purpose is not to be increased by a special allocation).  See id. at II-147, 1986-3 C.B. (Vol. 4) at 147.

Although the self-charged interest situation is specifically recommended as a subject for regulations, the legislative history

also contains the suggestion that other situations may be appropriate for such netting treatment, as follows:

> The conferees anticipate that Treasury regulations will be issued to provide for the above result.  <u>Such regulations may also, to the extent appropriate, identify other situations in which netting of the kind described above is appropriate with respect to a payment to a taxpayer by an entity in which he has an ownership interest</u>.  * * *  [<u>Id.</u>; emphasis added.]

There was congressional recognition that transactions, other than those involving lending, essentially can be self-charged, and thus lack economic significance.  Congress expressly anticipated that the Secretary would issue regulations dealing not only with self-charged interest but also other situations where netting would be appropriate.  Like the rules for self-charged interest, relief from nonlending situations in which self-charged transactions arise is based on the principle that the passive loss rules should not apply if the income to be offset against the passive activity loss is essentially a payment by the taxpayer to himself.

Pursuant to section 469(l), which requires the Secretary to promulgate regulations, respondent issued section 1.469-7, Proposed Income Tax Regs., 56 Fed. Reg. 14034 (Apr. 5, 1991), dealing with self-charged treatment for lending transactions. The proposed regulation, however, solely addresses lending transactions and does not, as Congress contemplated, address any other self-charged income and deduction situations.  There is no

indication that the Secretary considered situations other than lending transactions; i.e., that the Secretary specifically decided that no other transactions should qualify.  We do know that the legislative history contains a directive that regulations be promulgated to deal with self-charged lending transactions.  Thus, the Secretary's actions were not necessarily voluntary.  In addition, nonlending transactions have not been specifically addressed in any of the other passive activity loss regulations.[5]

### B.  Self-Charged Rules and Nonlending Transactions

In the absence of regulatory guidance by the Secretary and in light of the legislative history (committee report language) petitioners have reasonably taken the position that the netting of nonlending items may be permissible.

In the absence of regulations dealing with nonlending transactions, we must decide which party's litigating position most reasonably comports with section 469.  While petitioners urge us to invalidate section 1.469-7, Proposed Income Tax Regs., we are unwilling to do so because that regulation addresses self-

---

[5] We have located only one reference to the term "nonlending" in the context of sec. 469 and related regulations. Sec. 1.469-11T(a)(2)(iii)(B), Temporary Income Tax Regs., 56 Fed. Reg. 14034, 14040 (Apr. 5, 1991), is a proposed amendment that contains a reference to "nonlending transactions".  Neither party, however, referenced this proposed amendment, and we do not find it relevant to the issue before us.

charged interest in accordance with the congressional mandate.[6]
Here, we are faced with the unusual situation where the Secretary
has promulgated regulations dealing with some, but not all, of
the issues intended and/or anticipated by Congress. Congress
anticipated the Secretary would issue regulations regarding self-
charged treatment in situations where, with respect to payment to
a taxpayer by an entity in which the taxpayer has an ownership
interest, netting would be appropriate. The Secretary, however,
addressed only self-charged interest in proposed regulations.

Had self-charged nonlending transactions been addressed in
regulations, respondent's regulatory position would have been
afforded greater deference than as a litigating position.[7] See
Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,
467 U.S. 837 (1984). Under Chevron, legislative regulations are
entitled to the highest level of judicial deference. See id. at
843-844. This deference, however, does not extend to a
litigating position taken by an administrative agency.

---

[6] There is some question as to whether a proposed regulation
is susceptible to "invalidation". Fortunately, this question
need not be addressed at this time.

[7] In light of the legislative history, it is difficult to
imagine the issuance of regulations denying self-charged
treatment for appropriate nonlending situations. Respondent does
not argue here that petitioners' situation is inappropriate.
Instead, respondent contends that the failure to address
nonlending situations in the regulations results in taxpayers not
being enabled to offset items other that the lending transactions
covered in the proposed regulation.

Respondent's litigating position is that section 469 is not self-executing. Therefore, in respondent's view, taxpayers are unable to claim self-charged offsets for items other than interest, and, in the absence of specific regulations, courts would not be permitted to decide that nonlending transactions are subject to self-charged treatment. Conversely, petitioners argue that section 469 is self-executing, they are entitled to claim self-charged treatment, and this Court is permitted to approve such treatment. We agree with petitioners.

In general, where regulations have been necessary to implement a statutory scheme providing favorable taxpayer rules, this Court has found that the statute's effectiveness is not conditioned upon the issuance of regulations. See Estate of Maddox v. Commissioner, 93 T.C. 228, 233-234 (1989); First Chicago Corp. v. Commissioner, 88 T.C. 663, 676-677 (1987), affd. 842 F.2d 180 (7th Cir. 1988); Occidental Petroleum Corp. v. Commissioner, 82 T.C. 819, 829 (1984). As in the above-cited cases, we are placed in the difficult position of "doing the Secretary's work" where there is a failure to issue regulations that are congressionally intended. First Chicago Corp. v. Commissioner, supra at 677. If Congress intended relief from the passive activity rules for self-charged transactions, we must decide whether petitioners' claim is within that intent. In other situations, we have held that the U.S. Department of the

Treasury's failure to provide the needed guidance should not deprive taxpayers of the benefit or relief Congress intended. However, if, as contended by respondent, the Secretary was given dominion over whether taxpayers were entitled to offset self-charged items, then a court may not substitute or exercise its judgment in deciding what rules or regulations should have been promulgated. To answer these questions, we turn to the statute and legislative history.

The relevant statutory provision is section 469(l), which provides as follows:

> SEC. 469(l) Regulations.--The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out provisions of this section, including regulations--
>
>    *       *       *       *       *       *       *
>
>    (2) which provide that certain items of gross income will not be taken into account in determining income or loss from any activity (and the treatment of expenses allocable to such income),
>
>    *       *       *       *       *       *       *

In determining whether section 469(l)(2) is self-executing, it is instructive to look at how section 469(l)(1) has been interpreted by this Court. The language of section 469(l)(1) has been generally described as self-executing. In Schwalbach v. Commissioner, 111 T.C. 215, 226 (1998), "we [found] nothing in the statutory text, or in its legislative history, that conditions the effectiveness of section 469 on the issuance of

regulations." See also <u>Trans City Life Ins. Co. v. Commissioner</u>, 106 T.C. 274, 299-300 (1996); <u>Estate of Neumann v. Commissioner</u>, 106 T.C. 216 (1996); <u>H Enters. Intl., Inc. v. Commissioner</u>, 105 T.C. 71, 81-85 (1995). We can find no reason that would justify or reconcile treating section 469(l)(1), which was at issue in the <u>Schwalbach</u> case, as self-executing and treating section 469(l)(2) as not being self-executing.

We have held language similar to that in section 469(l)(2) to be self-executing. For example, in <u>International Multifoods Corp. v. Commissioner</u>, 108 T.C. 579, 584 (1997), the taxpayer sourced a loss in accordance with the statutory rule of section 865(a). Despite a statutory provision that "The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purpose of this section, including regulations * * * relating to the treatment of losses from sales of personal property," no loss sourcing regulations were issued. The Commissioner argued that nothing in the statute required the promulgation of any "particular rule" with respect to the allocation of losses on the disposition of personal property. In rejecting that argument, we found that Congress had intended to change the rules regarding the sourcing of losses and held that the Commissioner could not hide behind the failure to promulgate regulations. Under those circumstances, we stated:

> When Congress directs that regulations be
> promulgated to carry out a statutory purpose, the fact

> that regulations are not forthcoming cannot be a basis for thwarting the legislative objective.  It is well established that the absence of regulations is not an acceptable basis for refusing to apply the substantive provisions of a section of the Internal Revenue Code.
> * * *

Id. at 587.  This Court reasoned that Congress had articulated the "overall purpose" behind the statute in the legislative history, and the taxpayer's action was appropriate even in the absence of regulations because the statute was self-executing.

Moreover, where the regulations merely provide "how" a statutory provision applies, this Court has found the statutes to be self-executing.  In Estate of Neumann v. Commissioner, supra at 218-219, the language in the statute's command provision (that is "The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purposes of this chapter") was contrasted with the language from certain other statutes that provide that a statutory provision would apply "only to the extent provided in regulations prescribed by the Secretary."  See also Occidental Petroleum Corp. v. Commissioner, supra; First Chicago Corp. v. Commissioner, supra.  In Estate of Neumann v. Commissioner, supra at 221, we concluded that

> issuance of regulations is to be considered a precondition to the imposition of a tax where the applicable provision directing the issuance of such regulations reflects a "whether" characterization * * * and not where the provision simply reflects a "how" characterization.  * * *

The command provision of section 469(l) contemplates regulations that reflect a "how" characterization and does not contain the type of "only to the extent" language that is found in statutes that are not self-executing.

Respondent's argument is essentially that the statute is not self-executing since the Secretary was charged with writing regulations. Respondent's position that congressionally intended benefits can be withheld simply by the refusal of the Secretary to issue regulations is peculiarly Draconian. Respondent, in a brief devoid of case references, articulated no reason for denying the taxpayers in this case the tax treatment sought. In that regard, allowing netting in this case fulfills the "economic significance" concerns expressed in the legislative history. The failure to issue regulations covering nonlending transactions should not be a reason to preclude taxpayer from congressionally intended and appropriate relief. As stated in Estate of Maddox v. Commissioner, 93 T.C. 228, 234 (1989),

> we must do the best we can with the statutory provision
> * * * now before us in the absence of pertinent
> regulations, since, in our view, the Secretary cannot
> deprive a taxpayer of rights which the Congress plainly
> intended to confer simply by failing to promulgate the
> required regulations. * * *

Section 469(l)(2) mandates the issuance of regulations providing "that certain items of gross income will not be taken into account in determining income or loss from any activity (and the treatment of expenses allocable to such income)". Although

self-charged items are not specifically mentioned in the statute, we have little difficulty placing self-charged items within the ambit of section 469(l)(1) and (2). Through the legislative commentary, the Secretary was directed to issue regulations for self-charged lending transactions. The Secretary, by following that direction and issuing section 1.469-7, Proposed Income Tax Regs., 56 Fed. Reg. 14034 (Apr. 5, 1991), acknowledges that the mandate of section 469(l)(2) includes self-charged items. Under those circumstances, it is more difficult to accept respondent's position that the Secretary's failure to issue regulations is a bar to a taxpayer's claiming that nonlending self-charged transactions may also be offset. Respondent's position would ring more true, but not necessarily more correct, if no regulations at all regarding self-charged items had been issued.

Having decided that the absence of regulations here is not an acceptable basis for respondent's determination, we turn to the provision in question to determine whether petitioners are entitled to self-charged treatment for the management fee income and deductions. Petitioner received nonpassive income, through SMC, for SMC's providing real estate management services for the partnerships (in which petitioner had an ownership interest, either directly or indirectly). In connection with these real estate management services, petitioner was also entitled to a deduction for his distributive share of the management fees

expense of the partnerships for the services provided by SMC. The essence of these transactions is that petitioner, through entities in which he held an interest, earned and paid the same management fees; i.e., moved management fees from his "passive pocket" to his "nonpassive pocket". Under those circumstances, the partnerships' management fee deductions should be offset[8] against the management fee payments (income) received by SMC. There was no net accretion of wealth with respect to the management services provided from SMC to the partnerships. Under respondent's determination, petitioners would be required to recognize income even though respondent does not dispute that, in effect, petitioner has simply paid a management services fee to himself. Respondent has identified no difference between the circumstances in this case and those set forth in the proposed regulation and the legislative history permitting an offset where a taxpayer's self-charged transaction involves interest (a lending transaction).

Respondent's position denying the offset to petitioners is not only contrary to the legislative history and intent of Congress, but it does not appear to be based on any established tax policy or any reason other than the failure to promulgate a regulation. Again, we note that respondent has not articulated

---

[8] Any offset must, of course, be limited to petitioners' ownership percentages.

any reason why petitioners should be prohibited from recharacterizing the management fees deduction as nonpassive in order to accurately reflect the economic significance of the transaction.  Indeed, respondent does not dispute that disallowing self-charged treatment for the management fees would result in the very mismatching that Congress sought to alleviate by directing the Secretary to issue regulations for self-charged transactions.  Nor has respondent identified a distinction between lending and nonlending transactions in the context of this case that would lead us to conclude that the two transactions should be treated differently under the self-charged regime.

We have considered all other arguments advanced by the parties, and to the extent we have not addressed these arguments, consider them irrelevant, moot, or without merit.[9]

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>petitioners</u>.

---

[9] Because of our conclusion that petitioners are entitled to self-charged treatment with respect to the management fees, we find it unnecessary to address their alternative argument that the partnerships properly reported two activities to petitioner (or to the upper tier partnerships or S corporations).